```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOEL BOWMAN, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-0376 (JBS) |
| v. | **OPINION** |
| PARKER HANNIFIN CORP., et al. | |
| Defendants. | |

APPEARANCES:

Kerri E. Cody, Esq.
Cody & Cody, LLC
651 S. White Horse Pike
Hammonton, New Jersey 08037
    Attorney for Plaintiff

Richard P. O'Leary, Esq.
McCarter & English, LLP
245 Park Avenue
New York, NY 10167
    Attorney for Defendant Parker Hannifin Corp.

**SIMANDLE**, District Judge:

    This matter arises from injuries sustained by Plaintiff while he was servicing a military aircraft for the New Jersey Air National Guard at the Atlantic City Airport. Plaintiff used a locally designed and assembled device to remove fuel from an aircraft system with high-pressure nitrogen. A low-pressure hose manufactured by Defendant was incorporated as a component of the device. This hose burst during the procedure, injuring the Plaintiff. Before this Court is a motion for summary judgment by

the Defendant Parker Hannifin Corporation.  For the following reasons, the motion for summary judgment is granted.

I.   BACKGROUND

During the period relevant to this case, Plaintiff, Joel Bowman, was a resident of New Jersey and a Staff Sergeant in the 177th Fighter Interceptor Group, New Jersey Air National Guard, based at the Atlantic City Airport in New Jersey.  (Pl. Ex. A at 14:13-21, 20:4-5, 39:4-5.)  Mr. Bowman was assigned to perform maintenance on the fuel systems of the unit's F-16 fighter aircraft.  (Id. at 20:6-9, 21:6-9.)  One of his duties was to purge the aircraft's Emergency Power Unit (EPU) of its toxic hydrazine fuel to render the aircraft safe for certain maintenance work.  (Id. at 22:8-15, 33:18-24.)  Mr. Bowman was trained and experienced in this procedure.  (Id. at 21:22-25, 22:1-7, 23:5-16.)

Fuel system specialists purge EPUs by attaching a hose to the aircraft, and then force hydrazine out with pressurized nitrogen.  (Id. at 35:19-25, 40:1-7.)  Certain procedures require specialists to switch between 200 and 400 pounds per square inch (psi) over the course of the purge.  (Id. at 24:19-25, 25:1-8) Normally, he or she must disconnect one hose and attach another supplying a different pressure.  (Pl. Ex. E at 11:15-23.)  Master Sergeant Randall Mason, also an aircraft mechanic in the unit, sought to expedite purges by joining the two hoses into a "T" fitting that connected to the aircraft through a single hose.

2

(Id. at 11:15-25, 13:11-17.)  Maintenance personnel could then change the pressure simply by switching the position of a valve. (Id. at 11:15-25.)

Mr. Mason collected several parts from various shops on base to create the device.  (Id. at 15:2-25, 16:1-25.)  One component was a length of rubber hose manufactured by Defendant, Parker Hannifin, a Texas Corporation.  (Id. at 14:6-9; Compl. at 1.) There is a factual dispute as to whether Mr. Mason assembled the device himself, or the fabrication shop assembled it for him. (Pl. Ex. A at 82:23-25, 83:1-5; Ex. E at 18:1-12.)  It is undisputed, however, that this device was locally fabricated, and in use for approximately one year prior to the accident.  (Pl. Ex. A at 48:25, 49:1-9; E at 22:17-19.)

Defendant supplied the rubber hose in bulk to the Department of Defense ("DOD") for low-pressure air and vacuum systems; it is approximately one half inch wide, and rated for 200 psi.  (Def. Ex. B at 2:6, 3:14-15; Pl. Ex. B at 3.)  Mason's device subjected the hose to 400 psi during EPU purges.  (Pl. Ex A at 54:5-18.) In accordance with DOD requirements, the hose was marked "LP-MIL-5593-4."  (Def. Ex. B at 2:8; F at 9:17-21; Pl. Ex. B at 4.) The letters "LP" indicate that the hose is designed for low pressure. (Pl. Ex. B at 4.)  U.S. Air Force Technical Order 42E1-1-1 requires technicians to consult it when they manufacture hose assemblies, and that same order indicates the hose was limited to 200 psi.  (Def. Ex. B at 2:10, 3:15.)  This technical order was

3

available on the base at the time of assembly.  (Def. Ex. E at 15:24-25, 16:1-16.; F at 28:15-25.)  Plaintiff does not contest that the hose was improperly incorporated into the Mason device, and in violation of Technical Order 42E1-1-1.

On January 28, 2002, Plaintiff's supervisor instructed him to perform an EPU purge on an aircraft.  (Id. at 39:4-18.)  The Mason device was the only connector available for the purge, and it was the first time Plaintiff ever personally attached it.  (Pl. Ex. A 49:3-16.)  Mr. Bowman did not read the markings on that or any purge hose at any time before or during the purge in question.  (Id. at 51:8-13.)  The hose developed an audible leak under high pressure.  (Id. at 52:1-17.)  While Mr. Bowman investigated the leak, the hose burst in his face and injured him.  (Id. at 52:20-23.)  An examination revealed that the rupture was "consistent with the type [of] failure one would expect if a properly fabricated MIL-H-5593 hose were repeatedly subjected to pressures which were twice the operating pressure of the hose."  (Pl. Ex. B at 3.)

Mr. Bowman subsequently filed suit against Defendant Parker Hannifin Corporation and others.  Plaintiff claims Defendant breached a "duty to warn of the dangers of foreseeable use" of the hose, and was strictly liable for his injuries.  (Compl. at 7.)  Defendant subsequently filed a motion for summary judgment.

II.  DISCUSSION

Defendant argues that it cannot be held strictly liable for Plaintiff's injuries because: (1) its product was substantially altered and not used as intended; and (2) Defendant had no additional duty to warn, and in any case a warning defect did not proximately cause Plaintiff's injuries.  For the following reasons, this Court does not find that the hose was substantially altered, but agrees that Defendant, as manufacturers of this component part, had no additional duty to warn beyond the markings provided.  Because no reasonable fact finder could conclude that the warnings were insufficient under New Jersey law, summary judgment will be granted without reaching the proximate cause issue.

   A.   Jurisdiction

For the purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of New Jersey, and Defendant corporation is a citizen of Texas.  28 U.S.C. § 1332(a)(1), (c)(1).  This Court therefore has subject matter jurisdiction over the case on the basis of diversity of citizenship.[1]  Pursuant to 28 U.S.C. § 1652, the laws of New Jersey will serve as rules of decision in the matter.

---

[1] Plaintiff does not state an amount in controversy in his complaint.  From the injuries described by Mr. Bowman in his deposition, however, this Court concludes that the amount in controversy exceeds $75,000 for the purposes of jurisdiction under § 1332.

B.   <u>Standard of Review for Summary Judgment</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>Id.</u>  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>Id</u>.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Liberty Lobby</u>, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of

which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

  C. Defendant's Grounds for Summary Judgment

Defendant presents its initial arguments under two headings: "Intended Use/Substantial Change" and "Failure to Warn."  (Def. Mem. at 4, 7.)  This Court finds it necessary to treat the two elements of the first point separately, since they present distinct legal issues.  Also, Defendant's "Failure to Warn" argument addresses proximate cause in the event that its product did not incorporate an adequate warning.  (Def. Mem. at 7.)  In accord with Defendant's reply, however, this Court first examines whether or not Defendant had a duty to warn in the context of the product's intended use.  (Def. Reply at 9.)  Based on this analysis, the Court does not find that the subject hose was substantially changed.  However, the intended use of the hose did not impose a duty to warn beyond the markings provided, and summary judgment is warranted on this basis.  The issue of whether any warning defect proximately caused Plaintiff's injuries is therefore not reached.

  1. Substantial Change

Defendant contends that members of the New Jersey Air National Guard incorporated their hose "into an assembly for which it was not rated," amounting to a "substantial change" that

7

absolves the corporation from strict liability under New Jersey law. (Id.) (emphasis omitted). This Court disagrees.

New Jersey Statute 2A:58C-2 provides for strict product liability, but the statute is not applicable to every instance of injury by a product. Defendant argues this case falls into an exception, citing Soler v. Castmaster, 98 N.J. 137 (1984). In Soler, the court found that, for the statute to apply, "a product must reach its user without substantial change in the condition in which it is sold." Id. at 147 (citation omitted). Defendant points to the following language: "A substantial alteration is one that involves not only a material change in the design or function of the product but also affects the risk of danger in its use." Id. at 148. Defendant argues that incorporation of its low-pressure hose into the high-pressure purge device was "a substantial alteration to the intended function of the product [that] adversely affected the risk of danger of its use." (Def. Mem. at 6.) This Court finds the argument unconvincing.

Defendant does not contend that the hose was physically altered, but that its improper use amounted to an alteration through increased risk. This Court finds no support for a "substantial alteration" that is not a physical alteration. If the Soler court intended such an interpretation it was certainly in dicta, since the plaintiff in that case altered a die-casting machine by mechanically modifying it. 98 N.J. at 143.

8

Furthermore, the <u>Soler</u> court expands on alteration by increased "risk of danger" by citing <u>Hanlon v. Cyril Bath Co.</u>, 541 F.2d 343, 345 (3d Cir. 1975), which involved physically modifying the starting mechanism on a machine. <u>Soler</u>, 98 N.J. at 148. This Court cannot, as a matter of law, determine that Defendant is not subject to strict liability through the substantial alteration of its product, where the evidence suggests that the hose was not physically altered. Summary judgment is therefore denied on this ground.

        2.   <u>Duty to Warn and Intended Use</u>

Defendant argues that incorporation of its product into the purge device was not an intended use under New Jersey law. (Def. Mem. at 6-7.) Plaintiff responds that Defendant is still strictly liable because it did not warn against this foreseeable misuse. (Pl. Br. at 7.) Defendant replies that the markings on the hose adequately communicated its capabilities, and that it had no further duty to warn as a manufacturer of a component. (Def. Reply at 9.) This Court agrees with Defendant.

Plaintiff does not claim that the Defendant's hose was defective in design or manufacture, but argues it had a warning defect. (Def. Br. at 3.) New Jersey Statute 2A:58C-2 provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that <u>the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it . . .</u>

9

> <u>failed to contain adequate warnings or
> instructions</u> . . . .

N.J.S.A. 2A:58C-2. (emphasis added). Furthermore, 2A:58C-4 provides:

> An <u>adequate product warning</u> or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that <u>communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used</u> . . . .

N.J.S.A. 2A:58C-4. (emphasis added). Defendant submits that the markings provided on the hose were adequate within the meaning of 2A:58C-2 to communicate its performance characteristics to intended users. (Def. Reply at 8.) Although the Court finds this argument persuasive, it resolves the issue on Defendant's compliance as a component manufacturer.

The subject hose had no independent use; it was supplied in bulk as "a flexible connection on low pressure air and vacuum systems." (Def. Ex. B at 3.) Defendant asserts its markings complied with DOD requirements, a fact supported by Plaintiff's own exhibit. (<u>Id</u>. at 7; Pl. Ex. B at 4.) Plaintiff does not disagree that the hose met every other design and manufacturing requirement, nor is there disagreement that this hose was subject to high pressures of 400 psi, or double its design capacity of 200 psi. Components that satisfy an owners's requirements are

subject to unique treatment under New Jersey products liability law.

In <u>Zaza v. Marquess and Nell, Inc.</u>, 144 N.J. 34 (1996), the New Jersey Supreme Court squarely confronted the limits of products liability for component manufacturers. The defendant in that case supplied a stainless steel tank that formed one component of a complex coffee processing system. <u>Id</u>. at 42-43. The manufacturer built the tank to specifications, with holes prepared for safety devices to prevent overflow. <u>Id</u>. at 43-44. However, the owner failed to attach safety devices before operating the processor, and an employee was injured by overflowing hot liquid. <u>Id</u>. at 44.

The court stated that the legislature intended the products liability statute to "balance the interests of the public and the individual with a view towards economic reality." <u>Id</u>. at 47-48 (citation omitted). Under this reasoning, the tank was not defectively designed because it was ordered without safety devices installed, and the defendant had no duty to warn of the lack of those devices. <u>Id</u>. at 63. The court noted policy concerns in extending liability to bulk and component suppliers and held

> a fabricator of a component part who builds a component of a system in accordance with the specifications of the owner, which part itself is not defective and is not dangerous until it is integrated into the larger system, has no legal duty to ensure that the

11

>   owner and installer-assembler properly
>   integrate the component into the system. So
>   long as the specifications were not obviously
>   dangerous, a fabricator of a component part
>   is not strictly liable to an injured employee
>   of the owner under the Products Liability
>   Act.

Id. at 65.  Summary judgment for the tank manufacturer was therefore warranted.  Id.

This Court finds that Zaza applies to the instant complaint. Although the tank in Zaza was designed for a specific complex system, and the subject hose was designed for general use in low-pressure systems, this Court finds that difference immaterial. This is particularly so since the hose bore markings to accurately communicate its capabilities to any system assembler, denominating it as a low pressure component hose.  Defendant's component was built to the owner's specifications, and did not become dangerous until improperly incorporated into the EPU purge device.  No reasonable fact finder could conclude that Defendant failed to conform this component to the Government's specifications, or that those specifications for this low-pressure hose were "obviously dangerous" as required by New Jersey law.  Therefore, as a matter of law, Defendant had no additional duty to provide warnings or instructions regarding its product, and is not liable under New Jersey's products liability law.  Summary judgment is therefore granted for the Defendant.

Since the component was not defective, the Court does not reach proximate cause.

III. CONCLUSION

For the reasons explained above, this Court grants the motion for summary judgment by Defendant Parker Hannifin Corporation.  This Court dismisses all counts of the Complaint against Parker Hannifin Corporation, and enters judgment in its favor and against Plaintiff.  The accompanying Order is entered.

**July 6, 2005**              **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                               United States District Court